In the Matter of the Application of ROBERT A. MARKS, Petitioner, Respondent, to Review a Determination of THOMAS J. MANGAN and Others, Constituting the Board of Regents of the State of New York, Appellants. ·

Third Department, April 30, 1941.

*Charles A. Brind, Jr.* [*Joseph Lipsky* with him on the brief], for the appellants.

*Charles M. Setlow,* for the respondent.

CRAPSER, J.   Application was made by petitioner-respondent to Supreme Court, Albany County, for an order directing the Board of Regents to issue to respondent an " Extension of Authority " to practice osteopathy.   Said application was granted.

The respondent, Robert A. Marks, was duly licensed to practice osteopathy in the State of New York June, 1919, and has been practicing in the city of New York from that time.   Prior to taking up the study of osteopathy, he received a qualifying medical student's certificate from the New York State Education Department.   Respondent was blind when said certificate was issued to him and has been blind ever since.   Respondent's physical handicap

was then known to the New York Education Department, when he earned the right to study medicine.

After completion of a course of four years' study in the Philadelphia College of Osteopathy, respondent was graduated from that institution.

At that time the practice of osteopathy consisted mainly of osteopathic procedures, such as manipulation of the bones, manual manipulation, massage and passive exercises, and did not include the prescribing and using of drugs and surgical procedures.

The physical handicap of blindness would not be any detriment to one holding a license to practice osteopathy in the giving of such osteopathic treatments nor would there be any danger to the patient.

The Legislature, by chapter 741 of the Laws of 1939, amended section 1262 of the Education Law to make it read as follows: " A license to practice osteopathy shall not permit the holder thereof to administer drugs or perform surgery with the use of instruments. Provided, however, that any person holding a license to practice osteopathy or any applicant for such license, who upon the submission of proper credentials or by examination satisfies the Regents that he has received sufficient instruction and training, may be granted the right to use instruments for minor surgical procedures and to use anesthetics, antiseptics, narcotics and biological products. Licenses to practice osteopathy shall be registered in accordance with the provisions of this article, and the word osteopath be included in such registration; and such license shall entitle the holder thereof to the use of the degree D. O., or doctor of osteopathy."

The extension permits the use of instruments for minor surgery procedures and also permits the use of anesthetics, antiseptics, narcotics and biological products. Clearly, a blind person cannot perform these services without danger to the patient. Furthermore, the extent of the use of such anesthetics, antiseptics, narcotics and biological products depends upon the color and appearance of the patient. The reactions of the same amount of drugs upon different people vary and a blind person would be entirely unable to determine the reaction because this requires a sense of sight. The sense of sight is apparently also necessary to enable the doctor to know the drug which he is using, the dose given and in many instances the site of the injection.

The written examination which the respondent took embraced the theory of narcotics, serology and endocrinology. No practical test in these subjects was given nor was any theoretical test concerning minor surgical procedures given to applicants for the

extension of the right to practice osteopathy. While the respondent indicated by the examination which he took that he has adequate theoretical knowledge in the subjects in which he was examined, there is a great difference between certifying that he possessed the theoretical knowledge and the granting of a certificate for the use of this knowledge by performing surgery and injecting medical products into the human system. For example, a blind person may have the theoretical knowledge for the driving of an automobile and may be able to do so perhaps under certain conditions but it would be quite a different matter for the State to grant such a person the right to drive an automobile in public places.

In connection with the amendment of section 1262 of the Education Law the Board of Regents had a meeting and on the 28th of July, 1939, adopted the following definitions:

" The phrase, ' minor surgical procedures,' as used in the law, shall be construed to include all surgical procedures excepting those involved in incision for: the opening of a natural body cavity, the removal of benign or malignant tumors, bone fractures, the amputation of an extremity or an appendage, the removal of any gland or organ or part thereof, or plastic surgery of the human body.

" The phrase ' biological products,' as used in the law, shall be construed to include serums, vaccines, toxins, antitoxins and glandular or other products of living tissues."

Dr. Marks was notified before he took the written examination that he would not be granted a certificate for an extension of rights. Of course he may practice osteopathy under his original license as he has been doing from 1919 to 1939 and he can still continue.

On March 15, 1940, the Board of Regents at a meeting duly called and upon the recommendation of said committee denied the application of appellant, Dr. Robert A. Marks, for an extension of his right to practice osteopathy under section 1262 aforesaid. Such application was denied upon the ground that said Dr. Marks was blind and because of this unfortunate circumstance could not be expected to be able to perform the duties which the license accords under the aforesaid statute and definitions.

A regular medical student would pursue the same course of study as the petitioner-respondent but before being permitted to practice medicine in the State of New York must spend at least four years in a medical college and would during that time have received all the instructions that the petitioner-respondent has received and in addition would have seen many operations performed in hospitals and medical schools and would have gained a great deal of knowledge and information from the ability to observe

how things were done which are denied to the petitioner-respondent because of his blindness.

The respondent also seeks the right to use anesthetics. Anesthetics, the court well knows, consists of the administering of such compounds as ether, nitrous oxide (which is a gas) and cyclopropane, which physicians who are specialists in anesthetics hesitate to use because of its highly inflammable and dangerous character. There are others which are administered hypodermically called "local anesthetics." The appropriate point in a person's anatomy must be exactly selected by the person administering a local anesthetic. There cannot be any guess about this. In any instance, anesthetics may not be used safely unless the anesthetist continually observes the condition of the patient. Too much anesthesia may be fatal. Too little may be ineffective. A blind man could not safely administer anesthetics; nor, it is submitted, should the Regents or this court take the responsibility of permitting a blind man to do so.

The respondent would also like the privilege to use antiseptics. The court is familiar with the effects of overuse of iodine on some skins and the susceptibility of the epidermis of certain human beings to a particular antiseptic and the lack of susceptibility of others. The question as to whether a person may properly take a particular form of antiseptic depends upon the ocular observation of the person administering the antiseptic. Certainly the Regents should not be asked to permit a blind man to administer antiseptics.

The permission to use narcotics and biological products is sought by the respondent from the Board of Regents. Biological products include serums, vaccines, antitoxins, glandular or other products of living tissues and toxins. These are injected hypodermically.

The Board of Regents under the statute had discretionary authority not to grant the extension sought. The statute uses the word "may." This word is used after setting up the qualifications required by the statute, indicating that even though the applicant had passed the examination and met the other statutory requirements there was still to be left in the hands of the Regents a discretion as to whether a license should be accorded.

The Regents, in refusing the respondent the "extension of authority," did not act in an unfair, unreasonable, arbitrary or capricious manner.

The order of the Special Term should be reversed and the proceeding dismissed, without costs.

FOSTER, J., concurs; HEFFERNAN, J., concurs in a separate memorandum; HILL, P. J., dissents in an opinion, in which BLISS, J., concurs.

HEFFERNAN, J. (concurring). The protection of the health and welfare of its citizens is one of the duties devolving on the State as the sovereign power. It has the right and it is its duty to prescribe such rules and regulations as may be necessary to protect its people from the consequences of ignorance or incapacity. While a citizen has the right to follow any chosen profession, the State on the other hand is charged with the duty of protecting the public. The right of respondent to practice osteopathy, like the right to practice any other profession, is a valuable property right in the pursuit of which respondent should be protected and secured by the laws of the State. He has the right to continue the practice of his profession under his original license. His application for an extension of his license in order to practice surgery and to administer anesthetics was addressed to the discretion of the Board of Regents. With that discretion the courts, unless in extreme cases, should never interfere. A license by the Board of Regents granting respondent the privileges which he desires would in effect be a certification by them as to his competency to do the things which the license would permit him to do. To my mind it would be highly dangerous to permit one handicapped as is respondent to perform surgical operations or to administer anesthetics. It is unthinkable that a blind person could with safety do those acts, and the Regents would be remiss in their duty if they issued to him a license for that purpose. The argument is made that, of course, respondent would not attempt to perform a surgical operation or to administer an anesthetic. If that be true then why does he insist upon a license? Neither the Special Term nor this court has any authority to override the discretion of the Board of Regents on the facts in this record. The order should be reversed and the proceeding dismissed.

HILL, P. J. (dissenting). Appeal from an order of the Albany Special Term which directs the Regents to issue to the petitioner a " Certificate of Extension of Authority " to practice osteopathy in the State of New York, for which he was licensed in 1919. By an amendment to section 1262 of the Education Law (Laws of 1939, chap. 741) it was enacted: " A license to practice osteopathy shall not permit the holder thereof to administer drugs or perform surgery with the use of instruments. Provided, however, that any person holding a license to practice osteopathy * * * who upon the submission of proper credentials or by examination satisfies the Regents that he has received sufficient instruction and training, may be granted the right to use instruments for minor surgical procedures and to use anesthetics, antiseptics, narcotics, and

biological products." Petitioner has passed the examination. He has been denied the so-called extension of authority by the Regents solely for the reason that he is blind.

The permission to practice osteopathy is granted by the People of the State acting through the Legislature. The only power granted to the Regents is to determine from credentials or by examination whether an applicant " has received sufficient instruction and training " to authorize the certificate. Doubtless the Legislature might enact that a person who is blind should not receive a license to practice medicine, surgery, osteopathy or any kindred profession. This has not been done. The view of the Special Term was that " It is not to be presumed that the petitioner will undertake such tasks as his blindness incapacitates him from performing." A license to practice medicine and surgery is issued by the Regents to an applicant who is not qualified to perform all of the delicate operations which the license issued under the statute would permit him to attempt. Only one physician in ten thousand is qualified to attempt to remove a brain tumor, but it has not been found necessary to limit the broad permission granted by a physician's license. This petitioner, sufficiently qualified to pass the examination, would know his limitations and would not unwisely attempt treatments requiring vision, more than the young physician would go into fields beyond his ability. It is not questioned that the remaining senses become more highly developed to compensate for the loss of sight. Petitioner's senses, particularly touch, and possibly others, may be developed to an extent which would permit him to be of greater assistance in some classes of cases than an osteopath with vision but without the compensating superdevelopment of the other senses. If a physician or an osteopath becomes blind after he has received his certificate and license to practice it is not thought necessary to cancel his license.

The language of the Legislature is that the Regents " may " grant a license if they determine by credentials or examination that an applicant " has received sufficient instruction and training." The meaning would not be different if " must " had been substituted for " may." The granting of a license by the Regents is not an act of grace. They act under power delegated by the Legislature. It has never been the theory of our lawmakers that those who suffer from physical handicaps should be discouraged or prevented from following any profession or vocation.

I favor an affirmance of the order.

BLISS, J., concurs.

Order reversed and the proceeding dismissed, with costs.